IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNEQUAL TECHNOLOGIES COMPANY, | CIVIL ACTION |
| Plaintiff, | NO. 22-2192-KSM |
| v. | |
| MERCURY SCREEN PRINTING, | |
| Defendant. | |

MEMORANDUM

**MARSTON, J.**                                                                                 **January 19, 2023**

After Defendant Mercury Screen Printing failed to pay for the lacrosse player shoulder pads that Plaintiff Unequal Technologies Company delivered to it on separate dates in March 2022, Plaintiff initiated this suit against Defendant for breach of contract, unjust enrichment, and violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Doc. No. 1.)

Presently before the Court is Defendant's motion to dismiss. (Doc. No. 17.) Defendant moves to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. (*Id.*) In the alternative, Defendant seeks to transfer venue to the United States District Court for the Northern District of New York. (*Id.*) Plaintiff opposes the motion. (Doc. Nos. 19, 21.) The Court held oral argument on January 12, 2023. For the reasons that follow, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction.

I.   **FACTUAL BACKGROUND**

Accepting all allegations in the Complaint as true, the relevant facts are as follows.

Plaintiff is a manufacturer of protective equipment for the athletic industry, particularly

lacrosse.  (Doc. No. 1 at ¶ 1.)  Plaintiff is a citizen of Pennsylvania and conducts business at 10 Lacrue Avenue, Glen Mills, Pennsylvania 19342.  (*Id.*)  Defendant makes apparel for the sporting industry and is a New York corporation, with offices located at 12 Valtrano Road, Albany, New York 12205.  (*Id.* at ¶ 2.)

Plaintiff alleges that on or about March 15, 29, and 30, 2022, Defendant agreed to purchase Lacrosse Player CC Shoulder Pads-Medium and Large for a total of $480,665.94.  (*Id.* at ¶ 5.)  That price included the cost of the freight.  (*Id.*)  Around that same time, Plaintiff submitted to Defendant invoices for the shoulder pads.  (*Id.* at ¶ 6; *see also* Doc. No. 1-4 at 1 (Mar. 18, 2022 invoice, with a due date of May 17, 2022), 2 (Mar. 29, 2022 invoice, with a due date of May 28, 2022), 3–6 (Mar. 30, 2022 invoices, with a due date of May 29, 2022).)  The invoices provide for an interest charge of 1.5% per month for late payments.  (Doc. No. 1 at ¶ 7.)  On May 20, Plaintiff's Chief Financial Officer, Kyle Cunningham, contacted Defendant for payment, but Defendant refused to pay.  (*Id.* at ¶ 8.)  When the Complaint was filed, the invoices remained unpaid.  (*Id.* at ¶ 9.)

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standards

#### 1. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff," *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (cleaned up), and the plaintiff must do so with "reasonable particularity." *Batista v. O'Jays, Inc.*, Civil Action No. 18-0636, 2019 WL 400060, at *3 (E.D. Pa. Jan. 30, 2019) (quoting *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.3d 1217, 1223 (3d Cir. 1992)).  Once a defendant has raised a jurisdictional defense, the plaintiff must

prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe*, 566 F.3d at 330.  Plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Element Fin. Corp. v. ComQi, Inc.*, 52 F. Supp. 3d 739, 745 (E.D. Pa. 2014).  When a court does not hold an evidentiary hearing, as is the case here, "the plaintiff need only state a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Metcalfe*, 566 F.3d at 330.

### 2. General and Specific Jurisdiction

A district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which the court sits.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  Pennsylvania's long-arm statute authorizes courts to assert personal jurisdiction to the fullest extent allowed under the United States Constitution.  42 Pa. Const. Stat. Ann. § 5322(b); *see also O'Connor*, 496 F.3d at 316.  Under the Due Process Clause of the Fourteenth Amendment, for a court to exercise personal jurisdiction over a non-resident defendant, the defendant must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (citation omitted); *see also O'Connor*, 496 F.3d at 316 ("[I]n determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" (citation omitted)).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor*, 496 F.3d at 317. "General jurisdiction is all-purpose" in that it "allow[s] a court to exercise jurisdiction over the defendant for any claim lodged against that party." *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, 2:15-cv-00965, 2020 WL 1526940, at *3 (W.D. Pa. Mar. 31, 2020). General jurisdiction exists where a foreign corporation's contacts with the forum state "are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (cleaned up). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *Id.* Only in an "exceptional case" may a court exercise general jurisdiction outside these two circumstances. *Id.* ("The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" (citation omitted)); *see also Schlafy v. Eagle Forum*, Nos. 19-2405, 19-2406, 19-2583, 2022 WL 1261319, at *2 (3d Cir. 2022) ("Only in an 'exceptional case' may general jurisdiction extend beyond a corporation's principal place of business and its state of incorporation. This case is far from exceptional, so Andrew's argument that general jurisdiction over Eagle Forum existed in New Jersey must fail."); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 534 (E.D. Pa. 2019) ("Under *Daimler*, the exercise of general jurisdiction over a foreign defendant (except in extraordinary circumstances) was limited to where the corporation was 'at home,' namely, the forums in which the foreign corporation is incorporated and where it maintains its principal place of business.").

In contrast, specific jurisdiction exists where the claims arise from or relate to the defendant's contacts with the forum state. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d

Cir. 1998). "Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted); *see also Vizant Tech., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 628 (E.D. Pa. 2015). Under the traditional test, to determine whether specific jurisdiction exists, courts in this Circuit consider whether (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) if "the exercise of jurisdiction otherwise comports with fair play and substantial justice."[1] *O'Connor*, 496 F.3d at 317 (cleaned up).

### B. Facts Averred in the Cunningham Affidavit[2]

As part of its sur-reply, Plaintiff submitted an affidavit from Cunningham, its CFO, who averred the following facts.

---

[1] Plaintiff appears to argue that the "effects test"—which courts use instead of the traditional test when evaluating specific jurisdiction with respect to *intentional torts*—should guide the Court's analysis as to some or all of his claims. (*See* Doc. No. 19-2 at 9–10 (arguing that specific jurisdiction exists because Plaintiff has "already pled that (1) Defendant has intentionally refused to pay for Unequal products in their possession, thus committing an intentional tort; (2) Plaintiff is a Pennsylvania company and is thus feeling the brunt of the harm in this forum; (3) Defendant is intentionally refusing to paya [sic] Pennsylvania company and is intentionally aiming their actions so that the harm is felt within the forum.").) *See Marten*, 499 F.3d at 297 ("This Court has determined that *Calder* allows a plaintiff to demonstrate personal jurisdiction if he or she shows: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aims his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." (cleaned up)). Plaintiff cites no authority to support that position, nor does it address Defendant's argument that the traditional test applies here.

[2] Defendant submitted an affidavit from Jeffrey Serge, a managing member of Dynamic Apparel Design, LLC d/b/a Mercury Screen Printing, in support of its motion to dismiss. (*See* Doc. No. 17-2.) Because many of the statements in Serge's affidavit conflict with the statements in Cunningham's affidavit (*compare* Doc. No. 17-2 at ¶ 14 (Serge stating that on March 15, 2022, he had not "completed a purchase order or otherwise confirmed any purchase for merchandise in this case"), *with* Doc. No. 21-1 at ¶¶ 7–10 (Cunningham stating that Serge, on behalf of Defendant, had verbally agreed to purchase 8,000 units from Plaintiff and that this agreement was memorialized in writing)), and the Court must draw all factual disputes in Plaintiff's favor at this stage, *see, e.g.*, *Miller Yacht Sales, Inc.*, 384 F.3d at 97, the Court focuses on Cunningham's affidavit.

On February 28, 2022, two independent sales representatives, Brian Dougherty and Todd Schreiner[3] met with Jeffrey Serge,[4] at Defendant's facilities in Albany, New York. (Doc. No. 21-1 at ¶ 4.) Cunningham states that following this meeting he understood that Serge, on behalf of Defendant, expressed to Dougherty and Schreiner "a desire to purchase all of Plaintiff's lacrosse equipment and for Plaintiff to be Mercury's exclusive supplier." (*Id.* at ¶ 6.)

That same day, Dougherty and Schreiner informed Cunningham that Serge, on Defendant's behalf, "verbally agreed to purchase 8,000 units of Plaintiff's lacrosse equipment." (*Id.* at ¶ 7.) Between February 28 and March 1, Cunningham and Serge finalized the terms of that agreement. (*Id.* at ¶¶ 8–9.) On March 1, Cunningham emailed Serge from Plaintiff's headquarters in Glen Mills, Pennsylvania, "memorializing the terms which [they] had negotiated for the purchase of 8,000 units." (*Id.* at ¶ 10.) The quotes Cunningham sent Serge stated "FOB Glen Mills, PA." (*Id.* at ¶ 11.)

On March 8, Serge emailed Dougherty and Schreiner, copying Cunningham, inquiring what Plaintiff had ready to ship "today" because "[he] need[ed] to update [his] customers ASAP." (*Id.* at ¶ 14; *see also* Doc. No. 19-2 at 27.) Serge contacted Plaintiff on several occasions, requesting that product be "drop shipped" to Defendant's customers. (Doc. No. 21-1 at ¶ 5; *see also* Doc. No. 19-2 at 34 (Mar. 14, 2022 email from Serge stating "Another order to drop ship here"), 37 (same), 54–56 (same).) Plaintiff shipped product to Defendant's customers at Defendant's request. (Doc. No. 21-1 at ¶ 16.) Specifically, the drop shipments were made on

---

[3] As independent sales representatives, Dougherty and Schreiner are not Plaintiff's employees. Rather, they are manufacturer representatives who reside in Pennsylvania. (Doc. No. 21-1 at ¶ 5; *see also id.* at ¶ 4 (stating that Dougherty and Schreiner were "independent sales representatives").)

[4] As noted *supra* footnote 2, Serge is a managing member of Dynamic Apparel Design, LLC, d/b/a Mercury Screen Printing. (Doc. No. 17-2 at ¶ 12.)

March 11, 14, and 15, 2022 and were sent from Plaintiff's headquarters in Glen Mills.  (*Id.* at ¶ 18.)  According to Plaintiff, these drop ship orders were part of the 8,000 units Defendant had verbally agreed to purchase during the meeting with Dougherty and Schreiner on February 28.  (*Id.* at ¶ 21.)

On March 16, 18, 21, 25, and 28, Plaintiff shipped an additional 6,220 units to Defendant at its New York warehouse, which were delivered to, and accepted by, Defendant.  (*Id.* at ¶ 22; *see also id.* at ¶ 23 (averring that Defendant's employees signed the Bills of Lading for those deliveries and stating that Serge signed a Bill of Lading himself).)  According to Cunningham, these were also part of the 8,000-unit order.  (*Id.* at ¶ 22.)

On March 23, Cunningham hand delivered to Serge one invoice for $197,626.55 after he, Serge, and Dougherty physically inspected and confirmed receipt of the items on the invoice at Defendant's warehouse in New York.  (*Id.* at ¶ 24.)  Then, on March 29, 2022, Plaintiff sent an additional invoice for $271,559.41 for the additional shipments delivered to Defendant's New York warehouse.  (*Id.* at ¶¶ 23, 27.)

All shipments originated from Glen Mills.  (*Id.* at ¶ 25.)

C.  *May 2022 Email*

In its opposition to Defendant's motion, Plaintiff provided an email Serge sent to Cunningham and Rob Vito, Plaintiff's CEO, on May 20, 2022.  Serge wrote:

> Kyle, I have submitted the drop ship invoices to my accounting team for payment.
>
> As far as what we have going on here for the 200k invoices plus we are going to have to work a bit closer together on getting those settled up.
>
> Robert, I don't know who you are, but please dont [sic] ever threaten me again with collections.  I will send these 28 pallets of shoulder pads back to you instantly and you can sit on them.
>
> As Kyle and I discussed this week the shoulder pad market is dead right

7

now.

Kyle I will call you in a bit to discuss. Are you available all day?

(Doc. No. 19-2 at 46.)

### D. Analysis[5]

#### 1. <u>General Jurisdiction</u>

It is undisputed that Defendant is a New York corporation with a principal place of business in Albany, New York. Because Defendant is not incorporated or headquartered in Pennsylvania, and the Court cannot find that extraordinary circumstances exist to render Defendant otherwise at "at home" in Pennsylvania, the Court may not exercise general jurisdiction over Defendant. *See, e.g.*, *Schlafy*, 2022 WL 1261319, at *2.

#### 2. <u>Specific Jurisdiction</u>

Plaintiff brings three causes of action: (1) breach of contract; (2) unjust enrichment; and (3) violations of the UTPCPL. Because Plaintiff agrees that its UTPCPL claim is subject to dismissal, the Court dismisses that claim with prejudice and will not consider it in our specific jurisdiction analysis. (Doc. No. 19-1 at 13 ("Unequal agrees to the dismissal of the Unfair Trade Practices Claim as not applicable to the Commercial Transaction between Unequal and

---

[5] In Plaintiff's opposition brief, Plaintiff argues that Defendant's contacts with other Pennsylvania entities are sufficient to establish personal jurisdiction in this forum. (*See* Doc. No. 19-1 at 10 ("In 2021 alone, Defendant engaged in extensive business with four different Pennsylvania entities. Villanova University, Southwestern Girls Lacrosse, the NEPA Rattlers Lacrosse team, and D-Town Dogs Lacrosse are all Pennsylvania-based teams and each were in a business relationship with Defendant over an unknown period."); *see also id.* at 9 ("Defendant also repeatedly had contacts with the forum when they [sic] engaged in [sic] business and sale of Unequal Products to Pennsylvania customer[s] across several years.").) It is unclear whether Plaintiff is arguing that these contacts support general jurisdiction or specific jurisdiction. Either way, Plaintiff is misguided. Absent exceptional circumstances (which do not exist here), general jurisdiction only exists where a defendant may be considered at home, and Defendant is not incorporated in Pennsylvania and does not have a headquarters here, such contacts do not establish general jurisdiction. These contacts also do not establish specific jurisdiction because Plaintiff's breach of contract and unjust enrichment claims clearly do not arise out of or relate to Defendant's contacts with wholly unrelated entities.

Mercury.").)  The Court considers the breach of contract and unjust enrichment claims together, since the unjust enrichment claim arises from the same set of facts as the breach of contract claim and is quasi-contractual in nature.  *See Mendelsohn, Drucker & Assocs. v. Titan Alas Mfg., Inc.*, 885 F. Supp. 2d 767, 771 n.1 (E.D. Pa. 2012) ("Mendelsohn also brings quantum meruit and unjust enrichment against Titan.  Because those claims stem from the contract claim, they will be considered within the breach claim for purposes of deciding the personal jurisdiction issue."); *Wineburgh v. Jaxon Int'l, LLC*, Civil Action No. 18-3966, 2019 WL 1284104, at *3 n.5 (E.D. Pa. Mar. 20, 2019) ("Courts typically assess specific jurisdiction on a claim-by-claim basis, but 'it may not be necessary to do so for certain factually overlapping claims.'  Here, Plaintiffs' claims [for breach of warranty, breach of contract, and violations of the UTPCPL] arise from the same set of facts, so the Court will analyze them together." (citation omitted)); *see also Omniwind Energy Sys., Inc. v. Redo*, Civil Action No. 14-5976, 2015 WL 790101, at *9 (E.D. Pa. Feb. 24, 2015) (evaluating personal jurisdiction of unjust enrichment claim under a quasi-contractual, not tort, framework, and stating that "[t]he same extended course of conduct supporting [its] finding of jurisdiction over plaintiffs' contractual claims . . . also supports finding personal jurisdiction over their unjust enrichment claim").

\* \* \*

"A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'"  *Grand Entm't Grp. Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).  "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  *Gen. Elec. Co. v.*

*Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). "In determining jurisdiction over a breach of contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).  Courts also consider contemplated future consequences. *Mellon Bank PSFS, Nat'l Ass'n*, 960 F.3d at 1223.  It is "not significant" who initiated the contractual relationship; rather, "the intention to establish a common venture extending over a substantial period of time is a more important consideration." *Gen. Elec. Co.*, 720 F.3d at 151.  As a general matter, "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support personal jurisdiction." *Grand Entm't Grp.*, 988 F.2d at 482–83.

Here, the evidence shows that the negotiations leading to the parties' "verbal agreement" were done entirely in New York. (*See* Doc. No. 21-1 at ¶¶ 4, 7 (stating that on February 28, Serge met with Schreiner and Dougherty at Mercury's headquarters in Albany, New York and verbally agreed to purchase 8,000 units of Plaintiff's lacrosse equipment).)  The contract negotiations[6] were not extensive and involved at most, passing contact with Pennsylvania.

---

[6] Because the Court finds there is no personal jurisdiction, the Court does not reach Defendant's Rule 12(b)(6) arguments.  The Court notes, however, that given the conclusory allegations in the Complaint, it is difficult to find that a contract even existed.  For example, Plaintiff has not pleaded who made the offer, what the offer was, who accepted the offer, or how the offer was accepted.  Plaintiff does not allege how many shoulder pads Defendant agreed to buy, who negotiated the contract, or any terms of the alleged agreement, other than the amount allegedly owed to Plaintiff.  Plaintiff merely pleads that "on or before March 15th, 19th, and 30th 2022, Mercury agreed to purchase certain lacrosse equipment . . . and entered into a contract for the purchase of the Lacrosse CC Shoulder Pads for a total of [$480,665.94]." (Doc. No. 1 at ¶ 5.)  And, looking outside of the Complaint and considering the Cunningham affidavit and briefs, it is unclear what the contract even is. (*Compare* Doc. No. 1 at ¶ 5 (Complaint, which alleges that "[o]n or before March 15th, 29th, and 30th, 2022, Mercury agreed to purchase certain lacrosse equipment identified as Lacrosse Player CC Shoulder Pads-Medium and Large and entered into a contract for the purchase of the Lacrosse CC Shoulder pads for a total of [$480,665.94]."), *with* Doc. No. 21-1 at ¶¶ 7–10 (Cunningham's affidavit, which avers "Schreiner and Dougherty informed me on February 28, 2022 that Serge, on behalf of Mercury, verbally agreed to purchase 8,000 units of Plaintiff's lacrosse agreement.  Between February 28, 2022 and March 1, 2022, Serge and I finalized the terms of Mercury's purchase of the 8,000 units. . . . Serge and I finalized the terms on March 1, 2022.  I sent Serge an email on March 1,

According to Cunningham, the negotiations took place between two days, February 28 and March 1, and he sent the email to Serge memorializing the terms of the agreement from Pennsylvania on March 1 (the day after the verbal agreement had already taken place in New York).  (*Id.* at ¶¶ 8–10.)  Taken together, Plaintiff has not presented evidence that Defendant's contacts with Pennsylvania were "instrumental" to the alleged contract's formation.  Further, Plaintiff has not pointed to any evidence that Defendant's contacts with Pennsylvania were instrumental to the breach.

Although there is some evidence that Defendant requested Plaintiff make three drop shipments of product from Pennsylvania to Defendant's customers in New York and Colorado, this is not evidence that the parties intended to establish a common venture extending over a substantial period of time or that the parties contemplated future consequences.  The Court finds this significant especially in light of the fact that the only evidence Plaintiff provides of a common venture cannot be considered.  Cunningham avers, "It was my understanding that Serge, on behalf of [Defendant], expressed to Schreiner and Dougherty a desire to purchase all of Plaintiff's lacrosse equipment and for Plaintiff to be Mercury's exclusive supplier."  (Doc. No. 21-1 at ¶ 6.)  But because this is hearsay and not based on personal knowledge, it is not the proper subject of an affidavit and the Court will not consider it.  *See, e.g.*, *Green Keepers, Inc. v. Softspikes, Inc.*, No. Civ.A. 98-2255, 1998 WL 717355, at *3 (E.D. Pa. Sept. 23, 1998) ("The

---

2022 memorializing the terms which we had negotiated for the purchase of 8,000 units."), *with* Doc. No. 19-1 at 12 (Plaintiff's opposition brief, arguing that the parties entered into a contract for the sale of goods when the bills of lading were signed on March 18, March 21, and March 28).)  Plaintiff not only flip-flops on when and how the parties entered into a contract (*see id.*), but also necessarily flip-flops on the number of contracts at issue given that there are six separate bills of lading that were signed.  (*Compare* Doc. No. 1 at ¶ 11 ("Plaintiff and Defendant entered into *a* contract."), ¶ 12 ("Plaintiff fully performed its responsibility under *the* contract"), ¶ 13 ("Mercury breached *the* contract"), *with* Doc. No. 1-5 at 7 (Mar. 24, 2022 Bill of Lading), 8 (Mar. 25, 2022 Bill of Lading), 9 (Mar. 28, 2022 Bill of Lading), 10 (Mar. 10, 2022 Bill of Lading), 11 (Mar. 15, 2022 Bill of Lading), 12 (Mar. 17, 2022 Bill of Lading); Doc. No. 19-1 at 12 (arguing that signing the bills of lading created a contract).)

11

statements in an affidavit only have value when they are based on the affiant's personal knowledge or are admissible for some other reason. The Carroll affidavit . . . does not meet this test. The information Carroll learned from unidentified Green Keepers representatives, golf products distributors and retailers, and certainly from a magazine article, is clearly inadmissible hearsay. . . . Because plaintiff has not established the admissibility of the statements proffered, we must disregard them."); *see also Northeast Revenue Servs., LLC v. Maps Indeed, Inc.*, Civil Action No. 3:14-cv-00852, 2015 WL 1963170, at *5 (M.D. Pa. Apr. 30, 2015) (striking allegations from affidavit where the affiant did not have any personal knowledge concerning someone else's communications with others when he was not included in those conversations).

None of the other evidence Plaintiff provided shows that the parties intended to form a long-term relationship or continuing obligation. Rather, Plaintiff's own evidence reveals that all the emails in which Serge asks Plaintiff to ship certain lacrosse equipment to Mercury's customers were sent on just a couple of days in March 2022. (*See* Doc. No. 19-2 at 27 (Mar. 8, 2022 email from Serge), 34 (Mar. 14, 2022 email from Serge), 37 (Mar. 14, 2022 email from Serge), 54–56 (Mar. 14, 2022 emails from Serge).) And Plaintiff states that the contract was for 8,000 units, most of which appear to have been delivered by the end of March. (*See* Doc. No. 21-1 at ¶ 21 (stating that drop shipments were delivered and part of the 8,000 units Mercury agreed to purchase), ¶ 22 (stating that Plaintiff shipped an additional 6,220 units to Mercury as part of the 8,000-unit order).) *Contra Fin. Software Sys., Inc. v. Questrade, Inc.*, CIVIL ACTION No. 18-742, 2018 WL 3141329, at *3, *5–6 (E.D. Pa. June 27, 2018) (concluding that specific jurisdiction existed in part because the "contract's terms—specifically, the five-year duration of the agreement and the notice provision—demonstrate[d] that [the defendant] contemplated sustained future consequences in Pennsylvania"); *Streamline Business Servs., LLC*

*v. Vidible, Inc.*, Civil Action No. 14-1433, 2014 WL 4209550, at *10 (E.D. Pa. Aug. 26, 2014) (finding that the plaintiff produced sufficient evidence to show that the court could exercise specific personal jurisdiction over the defendant for the breach of contract and unjust enrichment claims in part because the defendant "contemplated future dealings and contacts with Pennsylvania when it entered into a five-year oral contract" with the plaintiff).  At bottom, the brevity of the parties' relationship weighs against a finding of personal jurisdiction.  *See, e.g.*, *Fin. Software Sys., Inc.*, 2018 WL 3141329, at *5 ("The longer the duration of a contract, the more likely that a party is subject to the personal jurisdiction of the counterparty's forum state.  In general, an agreement will support a finding of personal jurisdiction when its terms commit the parties to a relationship longer than a year."); *Rotondo Weinreich Enters., Inc. v. Rock City Mech., Inc.*, No. Civ.A. 04-5285, 2005 WL 1196571, at *4 (E.D. Pa. Jan. 19, 2005) (finding specific jurisdiction did not exist because the "record [was] devoid of any evidence tending to establish that RWE and Rock City intended to engage in a common venture over a substantial period of time" and instead "establish[ed] that the parties' contractual relations were limited to the specific project at issue in this case, and that little more than one year elapsed from when RWE first approached Rock City to when [sic] the time the project was completed" and emphasizing "it [was] significant that the parties did not intend to establish a common venture extending over a substantial period of time").

      The Court acknowledges that Serge had communications with Cunningham in Pennsylvania in March 2022, which count towards the type of minimum contacts that support jurisdiction.  But Plaintiff provides only a handful of emails from Serge that were allegedly sent to Pennsylvania, primarily dealing with the three drop shipment orders over the course of six days in March 2022 (*see* Doc. No. 19-2 at 19 (Mar. 1, 2022 email from Serge), 22 (Mar. 1, 2022

13

email from Serge), 27 (Mar. 1 & 8, 2022 emails from Serge), 34 (Mar. 14, 2022 email from Serge), 36–37 (Mar. 14 & 16, 2022 emails from Serge), 54–56 (Mar. 14, 2022 emails from Serge)), and does not identify any telephone calls, remote conferences, meetings, or any other communications that would somehow connect this action to Pennsylvania. *Contra Streamline Bus. Servs.*, *LLC*, 2014 WL 4209550, at *10 (finding specific jurisdiction in part because the plaintiff had produced 119 emails in which the parties negotiated the contract, scheduled meetings, and discussed billing and client matters, during which the plaintiff's chairman was located in Pennsylvania).

Ultimately, when considering the totality of the circumstances (including, among others, the limited duration of the relationship, the lack of a continuing obligation, Plaintiff's initiation of the relationship, and the dearth of Pennsylvania-related communications during the negotiation and formation of the contract), the Court cannot find that Plaintiff has shown by a preponderance of the evidence that the exercise of jurisdiction in this matter would comport with fair play and substantial justice. The Court concludes that it does not have personal jurisdiction over Defendant with respect to Plaintiff's breach of contract and unjust enrichment claims.

## III. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction.

An appropriate Order follows.